IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT HOMER

STATE OF ALASKA,            )
                            )
    Plaintiff,               )
                            )
vs.                         )
                            )
JAY R. DARLING,             )
DOB: 8/13/1963              )
APSIN ID: 6916978           )
DMV NO. 6916978             )
SSN: 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            )
ATN: 108-594-144            )
                            )
    Defendant.              )
_____)
No. 3HO-S05-134 CR.

**STATE'S NOTICE OF 404(B) EVIDENCE**

I certify this document and its attachments do not contain the (1) name of a victim of a sexual offense listed in AS 12.61.140 or (2) residence or business address or telephone number of a victim of or witness to any offense unless it is an address identifying the place of a crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

The State of Alaska, by and through its District Attorneys June Stein and Crandon Randell, gives the following notice pursuant to Criminal Rule of Evidence 404(b).

**A Scheme to Defraud**

For a period of approximately five years, from 1992 until 1997, Jay Darling worked

*State v. Jay Darling*
*State's 404(B) Notice*
*page 1*

Exhibit C - Page 1 of 9

on a scheme to obtain life insurance that would pay in the event of his reported death. Darling, then living in Alabama, planned to fake his death in a kayaking accident in the Gulf of Mexico, where no body would be found. His as-yet-to-be-determined wife would, on his behalf, collect the proceeds of the life insurance policy. Darling discussed this plan with both his then-long-term girlfriend Lisa Eddins and best friend Michael Rabb. In fact Darling told Eddins that he wanted her to agree to marry him and agree to go along with the scheme.

Darling had previously concocted a plan to defraud an insurance company and had been successful at obtaining payment on a claim for a residential burglary. Darling filed for payment on a variety of items that he reported stolen, which he in fact had hidden away. This was merely a dress rehearsal for the life insurance claim.

In May 1997, following his marriage to Wanda Fay Wood, Darling informed Lisa Eddins that he married Wanda for the purpose of carrying out his scheme to fake his death in a kayaking accident and collect the insurance. Darling further stated that he and his new wife were moving to Alaska where he planned to carry out this plan. Darling also told Eddins, and Rabb, that he did not love Wanda Wood and did not share a normal husband/wife physical relationship with her.

**August 24, 1997 – A Death . . . overlooking Kachemak Bay**

STATE OF ALASKA
OFFICE OF THE DISTRICT ATTORNEY
THIRD JUDICIAL DISTRICT
120 TRADING BAY RD., SUITE 200
KENAI, ALASKA 99611
PHONE 283-3131

Jay Darling is accused of killing his wife, Wanda, on August 24, 1997, in Homer, Alaska. Wanda Darling, clad only in bra and panties, died in a fall over a cliff overlooking Kachemak Bay outside Homer. At the time of autopsy it was determined that the victim weighed 255 pounds. The body height, because of a "multitude of long bone fractures", was "roughly estimated" to be "approximately 5'9" in length plus or minus an estimated three inches." The brain was missing.

The victim's remaining clothing, consisting of blue jeans, a long-sleeved pink shirt, tennis shoes, and one sock, was recovered two days later on the slope below the scene of the fatal plunge.

### August 23, 1997 – A Near-Death in Kachemak Bay

In May 1997, the month following his marriage to Wanda in Tennessee, Jay Darling came to Alaska, without his wife, and visited a friend, Michael Rabb. Darling, together with Rabb, enrolled in a kayak symposium. The symposium emphasized safety in kayaking in the cold waters of Alaska: areas of emphasis included awareness of ocean conditions such as tides, winds, and waves as well as the danger of hypothermia and the necessity for proper clothing. Following the symposium Darling and his friend went to Homer, Alaska, and kayaked in Kachemak Bay. Both men wore wetsuits.

In July 1997, Alaska Mountaineering and Hiking received a $300.00 down payment in order to place a double kayak and one paddle on lay-away for Jay and Wanda Darling.

In August 1997, Jay and Wanda Darling left their home in Grenada, Mississippi, and moved to Alaska. On August 20 or 21, 1997, Jay and Wanda arrived in Anchorage; Darling immediately purchased the double kayak and one paddle. On August 22, 1997, sporting the new kayak and single paddle, Jay and Wanda drove to Homer. The next day, Jay and Wanda took the kayak, on a water taxi, across Kachemak Bay to Jakolof Bay. Darling was wearing a wetsuit; his wife was dressed in sweat pants and a fleece jacket. Wanda Darling, unlike her husband, had no previous experience in kayaks. Despite waves of two feet or more, and despite warnings from the taxi operator to stay close to shore, Jay Darling paddled the couple into unprotected waters outside Jakolof Bay. The kayak capsized and both fell out. Darling was able to reenter the kayak; his wife was not. Wanda Darling was then, according to her, towed behind the kayak holding on to a line for approximately 45 minutes. Once on a beach, Wanda Darling fired off a flare which attracted a passing fishing boat, and the couple was rescued.

### Motive for Murder

Jay Darling married Wanda Fay Wood on April 2, 1997, in a small private ceremony in Memphis, Tennessee. No family or friends were invited. Darling and his wife were

living, and working, in Grenada, Mississippi. Seven days following the wedding, on April 9, 1997, Darling, age 33, applied to State Farm for $3 million in life insurance. The application showed his wife, age 23 as of April 10, 1997, designated as "Proposed insured 1", and himself as "Proposed insured 2."

On April 17, 1997, Wanda Wood Darling removed her father as the beneficiary on a pre-existing $60,000 life insurance policy; the new beneficiary was Darling.

On May 5, 1997, Darling, with regard to his State Farm application, signed a "Confidential Financial Questionnaire" averring that his "earned individual income" was $130,000 per year, effectively, and fraudulently, doubling his actual salary of $65,000. This company, State Farm, issued a policy insuring each beneficiary, Jay and Wanda Fay Darling, for $500,000.

On July 8, 1997, Darling, by this date unemployed, applied to Lincoln Benefit Life Company for a life insurance policy on his wife for $500,000. The application, signed by Darling, falsely reflected a total annual income for himself of $92,000. Wanda Darling, on the same day, signed, or appears to have signed, a separate life insurance application with Lincoln Benefit requesting $500,000 life insurance on her husband, Jay Darling. This application showed Wanda's actual salary of approximately $23,000 being inflated to

STATE OF ALASKA
OFFICE OF THE DISTRICT ATTORNEY
THIRD JUDICIAL DISTRICT
120 TRADING BAY RD., SUITE 200
KENAI, ALASKA 99611
PHONE 283-3131

*State v. Jay Darling*
*State's 404(B) Notice*
*page 5*

Exhibit C - Page 5 of 9

$46,000. Both policies were approved and issued by Lincoln Benefit Life on August 12, 1997.

Following his arrival in Anchorage, with his wife, Darling made repeated calls to the insurance company, two and three calls a day, concerning the status and whereabouts of the life insurance policies.

On August 25, 1997, the day following his wife's plunge off the cliff, Darling, from Homer, made a phone call to Allstate Insurance, which wrote the policy under the name Lincoln Benefit, in Grenada, Mississippi, and requested the insurance company to overnight the life insurance policies to his new address in Anchorage. During this telephone conversation Darling neglected to inform the agent that, only yesterday, his wife had died.

Following Wanda's death, Darling went to see State Farm agent Kim Sikes, in Anchorage. According to Sikes, Darling:

> didn't want to deal through the mail system. He wanted to come here and he wanted to collect his money here in our office. Well, I had to contact the regional office because I wasn't sure if we would be able to do that or not cause he wasn't our insured and the regional office said that he could do it. . . . He came in here wanting his money right then and there. He had told us that he was mad at State Farm because he'd originally asked for a million dollars worth of coverage and accidental death on his life insurance policy for her and that we wouldn't issue it. That all we would issue was $500,000 and no accidental death. But then he went to Allstate and wanted Allstate to write a million dollars plus accidental death on both him and his wife. And I guess he had a verbal that they were going to do it but never

received an actual policy and was asking me legal advise about what he should do to recoup that money. . . . an additional million.

In September 2002, Darling was indicted by a federal grand jury on four counts of Wire Fraud and one count of Mail Fraud in connection with the scheme to fake his death and collect on life insurance. On January 24, 2003, pursuant to a plea agreement with the government, Darling pleaded guilty to one count of mail fraud. The <u>Factual Basis for the Plea</u>, which Darling agreed was true, stated, in part, that "This mailing was made pursuant to a scheme and artifice to defraud life insurance companies. The scheme and artifice involved more than minimal planning, and involved a conscious or reckless risk of serious bodily injury, either to Jay Darling, or to others."

### Argument

The State's position in this case is simple; Darling took out the life insurance on his wife with the intent to collect it as soon as possible after she was dead. The life insurance evidence is the motive for murder, and clearly admissible under Evidence Rule 404(b). The rule provides that evidence of other "crimes, wrongs, or acts" are admissible for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The kayak trip the day prior to the death is viewed not so much as another "act", as

contemplated under the rule, but, instead, as the initial stage of the plan, albeit unsuccessful, to kill his wife.[1] The State's position, derived from the evidence, is that Jay Darling, on the kayak outing one day prior to the plunge off the cliff, intended for his wife of four months to die in the frigid waters of Kachemak Bay. However, due to circumstances, and risks, which can only be the subject of speculation, Wanda Darling did not die in Kachemak Bay. The trial jury could conclude, after considering all the evidence, that the conduct occurring on August 23, 1997, was inextricably intertwined with the conduct occurring the next day at the cliff above Homer. If Rule 404(b) were invoked, a jury could conclude that the kayak incident was not, in fact, an "accident", but, instead, the "absence of mistake or accident." On the other hand, the jury could conclude, as argued by his lawyer, that, in fact, "Mr. Darling <u>saved</u> his wife's life the day before allegedly killing her, when their kayak turned over in Jackaloff (sp) Bay." Motion & Memorandum For Protective Order: pg. 20 (emphasis in the original). Therefore, it cannot be argued that, under the 404(b) rule, the "danger of undue prejudice outweighs the probative value of the evidence." The evidence of the kayak trip, and its evidentiary value to the ultimate question of murder, is clearly a matter for the jury.

---

[1] Darling advised his friend Michael Rabb that the "plan", to fake his own death, had been abandoned prior to his move to Alaska in August; he said that Wanda was "not comfortable" with it. Darling also told a friend, in a jailhouse telephone conversation, that Wanda's death "was the result of the abandonment of the scheme."

*State v. Jay Darling*
*State's 404(B) Notice*
*page 8*

Exhibit C - Page 8 of 9

Witnesses to the kayak incident who testified before the grand jury include Kimmer Ball, Karl Stolzfus, and Jane Wiebe. The State also intends to call William Jacob Wiebe, captain of the fishing boat that rescued Darling and his wife from the gravel bar outside Jakolof Bay.

Witnesses to the insurance policy evidence include Thomas White, Allstate Insurance, Kim Sikes, State Farm Insurance, and J. T. Armstrong, CLU, Allstate Financial Claim Service Center, Palatine, IL.

In addition, the State is of the view that evidence of Darling's conviction for Mail Fraud, in connection with the insurance scheme, is also relevant, and should be presented to the jury.

DATED this 26th day of January, 2006, at Kenai, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: _____
June Stein
District Attorney
Alaska Bar No. 0306032

I certify that a true copy of this pleading was mailed to Cynthia Strout, counsel for the Defendant, on this the 26th day of January, 2006.

*Pablo LaRoche*

*State v. Jay Darling*
*State's 404(B) Notice*
*page 9*

Exhibit C - Page 9 of 9